UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 17-70-DLB

FREDDY KEITH HOWARD                                                      PLAINTIFF

vs.                   **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL, Acting
**Commissioner of Social Security**                                DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

I.       **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 22, 2014, Plaintiff Freddy Keith Howard filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability beginning on February 9, 2012. (Tr. 279-88). Specifically, Plaintiff alleged that he was limited in his ability to work due to the following: "herniated disks in back"; "COPD"; "Recurrent Arrythmia[sic]"; "Gerd[sic]"; "Anxiety"; "Panic Disorder"; "Hearing"; "Arthritis in hands and knees"; "Degenerative Disc Disease"; "Depression"; "Sleep problems"; and "Tumor on tailbone." (Tr. 304).

Plaintiff's claim was denied initially and on reconsideration. (Tr. 123-24, 159-60). At Plaintiff's request, an administrative hearing was conducted on December 5, 2016,

1

before Administrative Law Judge ("ALJ") Boyce Crocker. (Tr. 34-59). On January 10, 2017, ALJ Reynolds ruled that Plaintiff was not entitled to benefits. (Tr. 40-67). This decision became the final decision of the Commissioner when the Appeals Council denied review on March 24, 2017. (Tr. 1-6).

On April 13, 2017, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for the Court's review. (Docs. # 12 and 14).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health and Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial

evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

Before he could consider Plaintiff's case, the ALJ was first required to consider Plaintiff's previous application for DIB, which had resulted in an unfavorable decision dated September 3, 2014. (Tr. 43). Based on Social Security Regulations and on the doctrine of *res judicata*, the ALJ determined that the previous unfavorable decision was final, binding, and involved the same issues, facts, and law. *Id*. As a result, the time period that he was permitted to examine was from September 4, 2014 forward. *Id*.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from September 4, 2014 through his date last insured. (Tr. 46). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease, congenital heart disease, chronic obstructive pulmonary disease, melanoma, mood disorder, and anxiety (20 CFR 404.1520(c) and 416.920(c))." *Id*. At Step Three,

3

the ALJ considered Listings 1.04, 3.02, 4.06, 13.03, 12.04, and 12.06, and concluded that Plaintiff did not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 47-48).

At Step Four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the exertional and non-exertional limitations as follows:

> [O]ccasionally reach overhead; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop; avoid humidity, wetness, and extreme temperatures; avoid even moderate exposure to dusts, odors, fumes; and pulmonary irritants; able to understand, remember, and carry out instructions; requires low stress work defined as no fast paced work or strict time limits; capable of simple tasks; and occasionally respond appropriately to supervisors, co-workers, and the public.

(Tr. 49). Based upon the RFC, the ALJ concluded that Plaintiff was not able to perform his past relevant work. (Tr. 56). Accordingly, the ALJ proceeded to Step Five and found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 57). The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from September 4, 2014, through the date of decision. *Id.*

### C. Plaintiff's Arguments

Plaintiff presents two issues on appeal, alleging that: (1) the ALJ erred "in adopting a prior residual functioning capacity when there was new and substantial evidence to support that the claimant's condition had worsened"; and (2) the ALJ "further erred in failing to give adequate reasons for assigning lesser weight to an opinion from a treating specialist when the both [sic] objective tests and findings support the medical opinion."

(Doc. # 12-1 at 1). For the reasons below, the Court finds that the ALJ did not err in adopting the prior RFC or in weighing Claimant's treating physician's opinion.

### 1. Substantial evidence supports the ALJ's adoption of Plaintiff's prior RFC.

Plaintiff argues that because he has "had a significant decline both physically and mentally," since his unfavorable DIB decision in 2014, the ALJ erred in adopting the RFC from the prior decision. (Doc. # 12-1 at 9-11). According to Plaintiff, because his FEV[1] was over 1.50 on three occasions and below 1.50 on one occasion during the relevant time period, "objective medical testing completely supports a worsening of [his] condition and therefore, required the ALJ to formulate a new residual functional capacity [RFC] … as well as fully consider whether [he] met or medically equaled Listing 3.02." *Id.* at 9-10. Plaintiff also argues that he has deteriorated mentally, with a decreased GAF and the additional diagnoses of agoraphobia and a depressive disorder. *Id.* at 10. Plaintiff alleges that the ALJ should have created a new RFC as a result of these worsening conditions. *Id.* at 9-11.

In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit held that when a claimant files sequential applications for benefits, the second ALJ's determination of the claimant's RFC is bound by the first ALJ's RFC determination, absent new or additional evidence. Subsequently, the Social Security Administration issued Acquiescence Ruling 98-4(6), which clarified that:

> When adjudicating a subsequent disability claim with an adjudicated period arising under the same title of the Act as a prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled

---

[1] FEV1 is defined as "forced expiratory volume in the first second of a forced expiratory maneuver." 28 C.F.R. 404, Subpart P, Appendix 1. The regulations on Listing 3.02 are found at: https://www.ssa.gov/OP_Home/cfr20/404/404-app-p01.htm.

with respect to the adjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998). "Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless the claimant presents new and material evidence that there has been either a change in the law or a change in the claimant's condition." *Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x. 419, 425 (6th Cir. 2015).

Recognizing *Drummond* and Acquiescence Ruling 98-4(6), the ALJ reviewed Plaintiff's unfavorable 2014 determination, and determined that there was no new and material evidence "showing a change in the [Plaintiff's] physical or mental impairments." (Tr. 54-55). Comparing first Plaintiff's physical impairments, the ALJ found that evidence "continues to show tenderness of the paraspinal muscles, limited range of motion with stiffness, 4/5 motor strength, bilateral paraspinal muscle spasms, negative straight leg raises, exaggerated lordosis, normal gate, trapezius muscle tenderness to auscultation and percussion, very poor air exchange, and normal shape and expansion." *Id.* at 55 (citing Tr. 218-220, 1038). To manage these physical impairments, the ALJ found that the medical evidence showed "minimal, conservative treatment for chronic obstructive pulmonary disease, degenerative disc disease, congenital heart disease, and melanoma." *Id.*; *see also* Tr. 54 ("The claimant contends he is not able to work because of severe lung impairment. [] However, the medical evidence of record shows minimal, conservative treatment with no hospitalizations for acute problems. [] The claimant is prescribed medications that appear to control his symptoms.") (internal citations omitted). Plaintiff's specific objection—that he met or equaled Listing 3.02 based upon four FEV

tests—is belied by the ALJ's determination, after reviewing the medical evidence, that Plaintiff did not meet or equal the severity of Listing 3.02. (Tr. 47).

In reviewing Plaintiff's history of mental impairments, the ALJ considered the prior ALJ's RFC, which limited Plaintiff to "low stress work, defined as no fast-paced work or strict time limits; capable of simple tasks; and occasional interaction with others." (Tr. 56). The ALJ found that there was "no new and material evidence of record. The medical evidence shows the [Plaintiff] receives therapy and prescribed medications for depression and anxiety. The objective evidence is mild with anxious mood, appropriate affect, cooperative behavior, and logical thoughts." *Id.* (internal citations omitted). And although Plaintiff alleges that his condition had worsened by psychiatrist Peter Oliver's new diagnosis of his panic disorder with agoraphobia, the treatment notes from Dr. Oliver indicate treatment for the generalized anxiety disorder only, with no treatment for the panic disorder with agoraphobia. (Tr. 1627-35).

Substantial evidence supports the ALJ's determination that Plaintiff presented no new and material evidence showing a change in Plaintiff's physical or mental impairments. *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x. 637, 645 (6th Cir. 2013) (affirming ALJ's adoption of claimant's previous RFC where there was no "significant increase in symptomology" and no physician had imposed greater restrictions on claimant since the first RFC).

### 2. Substantial evidence supports the ALJ's weighing of Plaintiff's treating physician's opinion.

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable

7

medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, and a non-examining source is one that has not examined the claimant but has provided medical or other opinion evidence in the case. *Id.*

The Social Security Administration regulations require the ALJ to give a treating physician's opinion weight based on the following: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability of the opinion; the consistency of the opinion with other evidence in the record; and whether the treating source is a specialist. 20 C.F.R. § 404.1527(c). In announcing the relative weight given to a treating physician's opinion, the ALJ "should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." 20 C.F.R. § 404.1527(f)(2). "Although the regulations instruct an ALJ to consider [the factors in § 404.1527(c)(2)], they expressly require only that the ALJ's decision include "good reasons … for the weight ... give[n] [to the] treating sources' opinion"—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x. 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)).

Plaintiff assigns as error the weight that the ALJ gave to treating physician Doctor Sikder's medical opinion. (Doc. # 12-1 at 11-13). The ALJ gave little weight to the treating physician because he found that "Dr. Sikder's opinion is not supported by objective findings and only refers to the claimant's subjective complaints." (Tr. 55).

In determining Plaintiff's RFC, the ALJ analyzed the record, including medical and testimonial evidence. (Tr. 49-56). The ALJ considered Plaintiff's testimony at the hearing on this matter and the examination and treatment notes of Doctors Ayesha Sikder, Scott Arnett, Himachala Rao Vellgandla, and Gerson Valdez regarding Plaintiff's pulmonary and cardiovascular function. (Tr. 50-51). The ALJ also considered records from a chest x-ray in April 2015, a chest CT-scan in June 2015, an MRI in September 2015, a chest x-ray in March 2016, and multiple pulmonary functioning studies. (Tr. 50-53). In addition, the ALJ considered Plaintiff's functional capacity physical assessment made by Doctor P. Saranga. (Tr. 125-38). Doctor Saranga is a state agency medical consultant. *Id.*

After consideration of the evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 54). Plaintiff claimed an inability to work because of a severe lung impairment, forcing him to lie around the house most of his time. *Id.* But the ALJ determined that the medical evidence showed that Plaintiff had been prescribed medication that controlled his symptoms, that Plaintiff's treatment was minimal and conservative, showing no hospitalizations for any acute problems, and that Plaintiff was capable of performing self-care and household chores. *Id.*

Reviewing the medical opinions of the doctors who examined and treated Plaintiff for his lung impairment, the ALJ found that Doctor Sikder's opinion merited little weight because it only refers to Plaintiff's subjective complaints and was not supported by the objective findings found elsewhere in the record. (Tr. 55). "[A] doctor cannot simply report

what his patient says and re-package it as an opinion." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x. 625, 631 (6th Cir. 2016).

Contrary to Plaintiff's allegations, the ALJ did not fail to give adequate reasoning for discounting Doctor Sikder's opinion. The ALJ considered Doctor Sikder's examination in June 2015, noting Plaintiff's subjective complaints, the medical notes and pulmonary functioning studies, a normal chest CT-scan, Doctor Sikder's findings at the examination, and the medications prescribed following the examination. (Tr. 50). The ALJ also considered a March 2016 pulmonary functioning studies, showing that Plaintiff's severe restrictive lung disease had "significant reversibility." (Tr. 50-51, 1260). In November 2016, Doctor Sikder had Plaintiff undergo another pulmonary functioning study and then examined Plaintiff in follow-up. (Tr. 1650-55). The ALJ noted that the functioning study showed "moderate obstructive and restrictive lung disease with normal lung volumes and diffusion which is nonreversible." (Tr. 51). In the follow up, Plaintiff complained of "wheezing upon exertion and no coughing." *Id.* The ALJ found that this medical history was not congruent with Doctor Sikder's opinion about Plaintiff's capabilities and limitations. (Tr. 55). Thus, substantial evidence supports the ALJ's determination that Sikder's opinion merited "little weight," as the ALJ detailed his "good reasons" for his finding in accordance with 20 C.F.R. § 404.1527(c). Accordingly, the Court finds no error in this portion of the ALJ's Step Four analysis.

In the end, Plaintiff is asking this Court to find that the ALJ misinterpreted the evidence or emphasized certain aspects of the medical record in favor of others. However, this is equivalent to requesting a *de novo* review of the record, a task far beyond the Court's limited role in determining whether the ALJ's finding is supported by

substantial evidence.  *See Roberts v. Astrue*, No. 1:09-01518, 2010 WL 2342492, at *9 (N.D. Ohio June 9, 2010). As stated earlier, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion.  *Smith v. Chater*, 99 F.3d at 781-82.  Substantial evidence exists to support the ALJ's decision, and the Court's review must stop there.

III.    CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)    The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

(3)    Defendant's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED;** and

(4)    A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 8th day of February, 2018.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\SocialSecurity\MOOs\Pikeville\17-70 Howard MOO.docx